## PHELPS *v.* THE STATE.

1. A written contract for the dissolution of a partnership between two persons, wherein it was, among other things, stipulated that in consideration of a specified sum to be paid by one to the other within a stated number of days the latter agreed to transfer his interest in the firm and its assets to the former, who was to execute to the seller " a thirty-day option to purchase the business " at a designated price, was apparently executory, and certainly did not by its terms operate to immediately effectuate the contemplated dissolution. In order for it to have this effect, it was, in any event, essential that both parties so understood and intended.

2. If shortly after the execution of such a contract, and before payment in full to the selling partner of the price agreed upon for his interest in the partnership, a debtor thereof, voluntarily and without solicitation, paid to him a sum due the firm, a proper determination of the question whether or not he received this money in the belief that it was still his right, as a member of the firm, to make the collection, would depend largely upon his understanding of the true intent and meaning of the contract with reference to the time when the dissolution was to take effect.

3. Accordingly, the mere facts that such a contract had been executed, and that the partner who thereby agreed to sell out had received money due the firm as above indicated, would not of themselves warrant the conclusion that in so doing he acted with a fraudulent intent, nor justify a jury in convicting him of a larceny of the money, even though he might,

after receiving the price of his interest in the partnership and after sign-
ing another instrument by which the dissolution was unquestionably
accomplished, have failed to pay over or account for the sum so collected.

4. Some of the instructions complained of in the motion for a new trial
were out of harmony with the rules above laid down, and therefore erro-
neous. For this reason, and upon a general view of entire case as pre-
sented by the record, there should be another trial.

Argued October 3, — Decided October 26, 1899.

Accusation of simple larceny.　　Before Judge Calhoun.
Criminal court of Atlanta.　May 27, 1899.

*Hunt & Golightly* and *J. D. Humphries,* for plaintiff in error.
*J. F. O'Neill,* solicitor, *H. C. Erwin, Howard Van Epps,* and
*Beverly W. Wrenn Jr.,* contra.

COBB, J.　Phelps was placed upon trial in the criminal
court of Atlanta, on an accusation charging that he had com-
mitted the offense of simple larceny by stealing "two dollars
and thirty-seven cents in money, the property of E. E. G. Rob-
erts." The evidence showed that Phelps and Roberts had
been copartners in a mercantile business under the firm name
of W. C. Phelps & Company, and that on February 11, 1899,
they entered into a written agreement, the material parts of
the same being as follows:　"This agreement witnesseth that,
for and in consideration of fifty dollars to be paid to W. C.
Phelps within seven days, I hereby agree to transfer to Mr.
E. E. G. Roberts my interest in the firm of W. C. Phelps and
Co., said Roberts to assume all and relieve me of all liabilities
of said firm, and in further consideration of the transfer said
Roberts is to execute to Mr. W. C. Phelps, a thirty-day option
to purchase the business for seventeen hundred and fifty dol-
lars." When this paper was signed Roberts paid to Phelps
fifty cents, and on the evening of the 13th day of February
the two persons signed another paper of which the following
is a copy:　"The firm of W. C. Phelps & Co., composed of
W. C. Phelps and E. E. G. Roberts, is hereby dissolved, the
said W. C. Phelps retiring from the business and E. E. G.
Roberts continuing the same and assuming all of the old firm
liabilities." On the same day Roberts paid to Phelps $49.50,
the balance due by the terms of the paper first above quoted,

$2 of the amount having been previously paid. On that day and before the paper last referred to was signed, Phelps called at the store of Shirley for the purpose of soliciting an order for goods for the firm of Phelps & Company, and while there Shirley, noticing that an account owing by him to that firm was due on that day, voluntarily and without solicitation on the part of Phelps, paid him the amount of the account and Phelps receipted for it in his individual name. According to the testimony of Roberts, Phelps never disclosed to him that he had collected this account and never accounted to him for the amount thereof in any settlement that he made with him. Phelps in his statement asserted that he had accounted to Roberts for this money along with other collections made by him. The jury, under the charge of the court, returned a verdict of guilty, and the plaintiff's motion for a new trial having been overruled, he excepted.

The rules of law applicable to the case under consideration are stated in the headnotes. The charge of the court is not in entire harmony with these rules, and for this reason a reversal of the judgment is necessary. Conceding that the testimony for the State disclosed the truth of the transaction under investigation, the issue to be determined was whether the accused, when he collected the money and failed to pay it over to Roberts, knew that he was acting without authority and intended to appropriate to his own use property which was not his own and which he had no right to control; or whether he was acting in good faith, believing he had a right to collect the money, and that his failure to account for the same to his former partner was of such a character as to render him only civilly liable for the wrong done by him.

*Judgment reversed.   All the Justices concurring.*